# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CST INDUSTRIES, INC.** | |
| **Plaintiff,** | |
| v. | Case No. 16-2025-JAR |
| **ENGINEERING AMERICA ENTERPRISES, INC.,** | |
| **Defendant.** | |

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on Plaintiff CST Industries, Inc.'s Application for a Temporary Restraining Order (Doc. 3). Defendant Engineering America Enterprises, Inc. was provided notice, has answered CST's Verified Complaint, filed a Brief Opposing Temporary Injunction, and appeared through counsel at a hearing before the Court on January 21, 2016. At the conclusion of the hearing, the Court orally granted Plaintiff's motion for temporary injunctive relief. For the reasons stated on the record at the January 21 hearing and supplemented by this Order, the Court grants Plaintiff's motion for TRO until this Court rules on the motion for preliminary injunctive relief, which is set for hearing on February 9, 2016.

A TRO preserves the status quo and prevents immediate and irreparable harm until the court has an opportunity to pass upon the merits of a demand for preliminary injunction.[1] Where the parties have notice of and an opportunity to respond to a motion for TRO, courts generally apply the standards governing issuance of preliminary injunctions.[2] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

---

[1] *Flying Cross Check, L.L.C. v. Central Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001).

[2] *See Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993).

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[3]  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[4]

As the Court stated on the record, Plaintiff sustained its burden on each of these four factors to obtain injunctive relief until the preliminary injunction can be heard in February.  The Court finds that CST will suffer irreparable harm if EAI does not abide by the non-competition provision in the parties' contract.  The Court finds that Plaintiff would suffer irreparable harm if it is forced to compete with its former dealer the day after the Contract terminates as it lacks the infrastructure to perform the functions performed by EAI, such as bidding for municipal projects.  CST has also made a showing that it would suffer irreparable harm from the loss of customers and goodwill caused by EAI's willful violation of its non-compete agreement.  In contrast, while EAI demonstrated that requiring it to "go dark" for the ninety-day non-compete period provided for in the contract would cause it irreparable harm, it did not demonstrate to the Court that enforcing the non-compete provision in this contract would necessarily require it to cease all municipal bidding activity, which comprises approximately 70% of EAI's revenue.  Instead, the parties should be able to maintain the status quo whereby EAI continues to perform its functions as a dealer by using CST as its supplier, at least until the Court is able to hear from the parties further at the February 9 preliminary injunction hearing.

The elements for a breach of contract claim under Kansas law are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that

---

[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[4] *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)).

plaintiff suffered damage caused by the breach.[5]  There are many disputed issues of fact and law on the merits of the breach of contract claim against EAI that are not amenable to resolution at this stage of the proceedings.  The parties dispute the meaning and application of the "Most Favored Nation" provisions, and they dispute which party may have breached the contract first and whether such breaches were material.  Nonetheless, the Court can find a likelihood of success on the merits based on the clear terms of the contract, which was attached to the Verified Complaint and provided to the Court at the hearing.[6]  Section 14.7 of the Contract provides that:

> Dealer acknowledges and agrees that any violation of this provision is a material breach of this Agreement and that CST cannot achieve an adequate remedy at law.  Dealer therefore agrees that CST shall be entitled to injunctive relief without bond in the event of Dealer's breach of this non-competition covenant, in addition to any other remedy available to CST at law or in equity.

Further, Defendant made clear at the hearing and in its notice of non-renewal that it does not consider this provision enforceable and thus plans to violate its terms.  Indeed, Defendant's showing of irreparable harm establishes that it believes it must serve as a dealer for competitor suppliers in order to avoid losing revenue and laying off employees.

Moreover, Defendant's argument that the addendum and amendment to the addendum modified the agreement to remove the non-compete provision is not supported by the plain language of those provisions.  The MFN provision states that the terms contained in EAI's agreement "shall be no less favorable to Dealer than the terms offered to other dealers distributing CST's Products in the United States of America for a period of (3) years from the Effective Date of this Addendum."  It further provides that if CST "enters into an agreement" which has more favorable terms with another dealer, it must notify EAI.  There was no evidence

---

[5] *See, e.g., Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).  The contract states that it is governed by Kansas law.  Doc. 1, Ex. 1 ¶ 20.

[6] Doc. 1-1.

presented at the hearing that any agreement with another dealer was *entered into* after January 16, 2012 that lacked a non-competition provision such as the one found in § 14.7.

Finally, the Court finds that the TRO is in the public interest.  Indeed, "the enforcement of valid contracts is in the public interest.  Moreover, the public has an interest in restraining unfair competitive practices."[7]  The Court also finds that in this particular case, it is in the public interest to maintain the status quo because the customer base for these parties will benefit from continuing to have EAI service and bid on projects supplied by CST, at least until the Court can have an evidentiary hearing on the motion for preliminary injunctive relief.

Rule 65(c) provides that "[t]he Court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  In this circuit, "a trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'"[8]  The Tenth Circuit has characterized the bond requirement as follows: "the trial judge's consideration of the imposition of bond is a necessary ingredient of an enforceable order for injunctive relief.  The plain language of the rule permits no other analysis."[9]  The parties did not address the issue of security at the hearing, and given the contract provision in this case that explicitly provides for no security, and the Court's finding that a status quo TRO would not harm Defendant, the Court will not require a bond or other form of security.

---

[7] *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1502 (D. Kan. 1995).

[8] *SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs., Inc.*, 216 F.3d 1088 (10th Cir. 2000) (quoting *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987)).

[9] *Coquina Oil Corp.*, 825 F.2d at 1462. The Third Circuit has expressed doubt that such a waiver relieves the district court of its duty to consider the bond requirement in the rule.  *Pharmethod, Inc. v. Caserta*, 382 F. A'ppx 214, 222 (3d Cir. 2010).

Accordingly, the Court finds that Plaintiff has made a clear and unequivocal showing that it is entitled the following temporary injunction:

- a) For purposes of this Order, the following terms shall be defined as follows:
    1) "Dealer" shall be defined as Defendant EAI;
    2) "Products" shall be defined as (1) bolted storage tanks and related products, (2) welded storage tanks and related products, (3) silo unloaders and related products, and (4) all other products CST sold to EAI during the Term of the Agreement (defined below);
    3) "Term of this Agreement" shall be defined as January 16, 2012 to January 16, 2016;
- b) **Defendant EAI (including its agents, employees, affiliates, and all those acting in concert with EAI):**
    1) **Shall not divert or attempt to divert any business or customer of the Dealer to any competitor, by direct or indirect inducement or otherwise. Further, neither Dealer nor any of its subsidiaries, parents or affiliates or any shareholder, member or partner of Dealer shall have any direct or indirect interest, including, without limitation, through ownership of greater than five percent (5%) of a competitive dealership, nor shall they sell, distribute, install or service, or act as a representative, agent or employee of a competitive dealership or sell, market, install, or service any product competitive with the Products authorized for sale by Dealer pursuant to this agreement.**

This matter is set for hearing on February 9, 2016 at 9:00 a.m. and, if necessary, shall continue into February 11, 2016 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: January 22, 2016

                S/ Julie A. Robinson
                JULIE A. ROBINSON
                UNITED STATES DISTRICT JUDGE